UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUPPLEMENT MANUFACTURING PARTNER, INC. d/b/a SMP NUTRA,<br><br>Plaintiff,<br><br>-against-<br><br>WILLIAM CARTWRIGHT,<br><br>Defendant. | Case No.<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

The above-captioned Plaintiff, Supplement Manufacturing Partner, Inc. d/b/a SMP Nutra ("SMP Nutra" or "Plaintiff"), for its Complaint against Defendant William Cartwright ("Defendant" or "Cartwright") alleges as follows:

## INTRODUCTION

1. This is an action for equitable relief and damages arising principally out of Defendant's conversion and misuse of Plaintiff's resources while Defendant served as an officer and shareholder of SMP Nutra. As alleged more fully below, Defendant was a shareholder of SMP Nutra and served as Chief Marketing Officer from June 2019 until August 2023. In August 2023, Defendant began a campaign against his own company, attempting to access company payroll and human resources accounts, sending mass emails to clients promising free products without input or authorization, harassing employees present at the office, and accessing employee email accounts.

2. As a result of Defendant's actions, Defendant has injured SMP Nutra and will continue to injure SMP Nutra, using his access and rights as a shareholder and former officer to do so. Defendant has illegally gained access to others emails in violation of the Federal Stored

1

Communications Act, as well as violating state law by converting SMP Nutra's resources for his own benefit, and breaching his fiduciary duties both as an officer and as a shareholder.

## JURSIDICTION

3.  The Court has jurisdiction over the causes of action asserted under 18 U.S.C. § 2511 and 18 U.S.C. § 2707. Supplemental jurisdiction over the remaining claims exists pursuant to 28 U.S.C. § 1367.

4.  The Court has jurisdiction over Defendant William Cartwright as he is a domiciliary of the State of New York and upon information and belief, resides in the State of New York in this District.

5.  Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant is a permanent resident of this District and a substantial part of the events or omissions giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

6.  Plaintiff SMP Nutra is a New York corporation organized and existing under the laws of the State of New York with an address at 1 Rodeo Drive in Edgewood, NY 11717 (the "SMP Nutra Office").

7.  Defendant William Cartwright is an individual who, upon information and belief, resides in the state of New York with an address at 38 E. Hamilton, Massapequa, NY 11758. Defendant is a founding shareholder of SMP Nutra and served as SMP Nutra's Chief Marketing Officer ("CMO").

*Defendant's Role at SMP Nutra*

1.  On or about June 2019, Defendant, along with Steven Milano ("Milano") and Joseph Imperio ("Imperio") agreed to form and run Supplement Manufacturing Partner, Inc.,

Plaintiff. SMP Nutra is a supplement and nutraceutical manufacturer, providing products related to the health and beauty industry.

2. The ownership percentages of SMP Nutra stand at 50% of shares owned by Defendant and 50% of shares owned by Milano, with an agreement that Defendant was holding shares for Imperio.

3. Defendant served as Chief Marketing Officer ("CMO") of SMP Nutra from June 2019 until Tuesday, August 29, 2023.

4. Pursuant to his role as CMO, had several responsibilities. These included registering the Company's domain name, <smpnutra.com> (the "Domain Name") and overseeing SMP Nutra's marketing team, which included management of the company website and customer relationship management software called Hubspot. As CMO and a founding shareholder, Defendant also had access to several company passwords and other authorized access to company accounts.

5. Hubspot is SMP Nutra's customer relationship management software. SMP Nutra's Hubspot account contains SMP Nutra's customer and lead lists, and is used to distribute bulk marketing messages. Hubspot is also used by SMP Nutra's sales representatives to contact and communicate with their customers. There is also a customer-facing component of Hubspot, where customers are able to access the status of their orders placed with SMP Nutra in real time. The operations team at SMP Nutra also uses the Hubspot service to access orders and communicate with customers. Thus, the Hubspot service is integral to both the internal operations of SMP Nutra and the customer-facing operations.

6. As an employee, Defendant had his own SMP Nutra email address, which was a part of SMP Nutra's overall Microsoft Office 365 Exchange cloud services. Defendant had

authorization to access his own email, but no similar authorization to access other email accounts for any other SMP Nutra employee or founder, including Milano.

***Defendant's Actions Prior to Termination***

7. On or about August 16, 2023, Imperio approached Defendant regarding the transfer of shares that he had been holding for Imperio. Upon information and belief, it is this approach that motivated Defendant to engage in the behavior forming the basis of this Complaint, to the detriment of SMP Nutra.

8. The first such action occurred shortly before Defendant was terminated on August 29, 2023, when Defendant emailed *every* current SMP Nutra customers informing them that product samples from SMP Nutra would now be provided free of charge.

9. Defendant undertook this action without input or approval from any other shareholder, officer, or any board member, including Milano or Imperio, and this action was outside of Defendant's responsibilities and authorities as CMO.

10. In a subsequent phone call with Imperio, Defendant informed Imperio that this action was undertaken for the explicit purpose of assisting Defendant's childhood friend and former co-worker, Robert Zorn ("Zorn"), who is currently facing criminal charges because SMP Nutra filed a police report upon discovering that Zorn stole product samples from the SMP Nutra warehouse for resale to third parties for Zorn's personal benefit.

11. Defendant's behavior continued to escalate. Before his termination on August 29, Defendant took to harassing and disrupting SMP Nutra employees at the SMP Nutra Office, as those employees were trying to perform their work.

12. One SMP Nutra employee who was harassed by Defendant was SMP Nutra's General Manager, Dave Borst ("Borst"). Pursuant to his role as General Manager, Borst had

provided a witness statement to the police in connection with the criminal investigation of former employee Zorn.

13. Knowing of Borst's role in the investigation of Zorn, Defendant approached Borst and demanded that he turn over a copy of the statement Borst made to the police regarding Zorn. Defendant's demands to Borst were so severe that he reported it to Human Resources, and expressed concern Defendant would use his position as CMO to terminate Borst's employment if he did not comply with Defendant's demands.

***Defendant's Unauthorized Access to Employee Emails***

14. Employee email accounts are stored on the Microsoft Office 365 Exchange Online server (the "SMP Server"). The only person at SMP Nutra who had access to the "back end", or administrative controls was Defendant, which was granted to him only so that Defendant could carry out his responsibilities as CMO. Defendant also had exclusive access to the company's Domain Name management, where emails and other company are configured.

15. In yet a further escalation, Defendant began attempting to gain unauthorized access to SMP Nutra employees' email accounts and emails stored on the SMP Server. Defendant did not have the authority to access SMP Nutra employees' emails in this manner because he was not seeking such access in connection with his role as CMO or for the benefit of SMP Nutra; instead, he was doing so to cause harm to SMP Nutra. In some cases, as alleged below, Defendant was successful in his unauthorized attempts to gain access to SMP Nutra email accounts and emails.

16. On August 16, 2023, Defendant attempted to gain access to emails belonging to the head of Human Resources, Brittany Milano (B. Milano).

17. On or about August 24, 2023, in response to the behavior by Defendant as alleged above, SMP Nutra sent a warning letter to Defendant (the "Warning Letter").

18. In the Warning Letter, Defendant was instructed to: (a) cease engaging in conduct detrimental to the company; (b) make no further unilateral contact with customers; (c) desist from any further harassment of employees, and (d) cease attempting to gain access to SMP Nutra email accounts without authorization.

19. Even after receiving the Warning Letter, Defendant did not desist.

20. On or about August 29, 2023, Defendant succeeded in gaining access to other employee emails at SMP Nutra. Defendant proceeded to access and dig through the emails of Milano, President of SMP Nutra, B. Milano, Head of Human Resources, Borst, General Manager, and other employees.

21. After August 29, 2023, Milano and other employees could see someone had run searches on their email accounts using different keywords, searches that had not been made by the authorized users of the accounts.

22. This unauthorized access was clearly attributable to Defendant in light of: (a) his previous attempt to access B. Milano's emails and account as alleged above; (b) the harassing behavior he exhibited at the SMP Nutra Office, as alleged above and (c) the fact that Defendant was able to quote verbatim statements made in actual emails sent by B. Milano to SMP Nutra's employment counsel, that Defendant would have had no other opportunity to see or access unless he had—without authorization—reviewed and accessed emails in B. Milano's account, stored on the SMP Server

*Defendant's Termination*

23. Due to Defendant's behavior, which continued even after he received the Warning Letter, SMP Nutra terminated Defendant's employment.

24. On August 29, 2023, SMP Nutra sent Defendant a letter, terminating Defendant's employment ("Termination Letter"). With that termination, which was made effective immediately, all of Defendant's authorities with respect to any SMP Nutra business were terminated.

25. Included in the Termination Letter was a demand that Defendant return all digital assets he had been given access to pursuant to his role as CMO, including the Domain Name, website passwords, and the Hubspot password (the "Digital Assets").

26. As of filing, Defendant has not returned any of the Digital Assets.

27. Defendant has also altered any passwords known by any other employee at SMP Nutra, thereby maintaining exclusive access.

28. In an attempt to stop Defendant's behavior and negotiate an amicable solution, on August 30, 2023, Plaintiff and Defendant's attorneys negotiate a brief cessation of action and a temporary severance agreement for Defendant.

29. Pursuant to this agreement, Defendant agreed to stop accessing company emails, sending unauthorized emails to customers, making any changes to the SMP Nutra website, and stop pressuring employees about Zorn's criminal charges. In exchange, SMP Nutra agreed to pay his salary and certain benefits for a two-week period.

30. Defendant did not abide by his agreement and only escalated his behaviors.

31. On the same day this agreement was entered into, August 30, 2023, Defendant again accessed Milano's emails, changed Milano's email password—which completely denied

the President of SMP Nutra access to his own emails—and changed the password to SMP Nutra's Hubspot account denying every SMP Nutra employee access.

32. As previously reviewed, the Hubspot account is integral to SMP Nutra's ability to sell to customers, market new products, track product orders—essentially all function of SMP Nutra's business. By denying all employees access, Defendant knowingly halted SMP Nutra's ability to conduct business.

33. On August 31, 2023, Defendant arrived at SMP Nutra's Headquarters, located at 1 Rodeo Drive in Edgewood, NY 11717, which was observed by Milano from his office.

34. Outside of SMP Nutra's offices, Defendant began speaking to SMP Nutra employees. According to an employee he spoke with, Kyle Peterson ("Peterson"), a current salesperson at SMP Nutra, Defendant is now actively soliciting SMP Nutra employees to leave and join a competing business being set up by Defendant. Defendant has promised to increase any compensation being paid by SMP Nutra.

35. Defendant also told Peterson that SMP Nutra was "in extreme danger" and that he was going to "take the company down" by starting a competing company.

36. On or about August 31, 2023, in the afternoon after Defendant visited SMP Nutra's offices, he went to Imperio's home and took Imperio's car from the driveway. Imperio's car contained his personal belongings, including supplies for his infant child.

37. The car was paid for out of Imperio's SMP Nutra's distributions to him, and Defendant and Imperio both had keys to the car. However, Defendant was not authorized to take the car or the belongings in it.

38. Defendant's actions have caused damages and irreparable harm to Plaintiff, an entity which it owes a fiduciary duty.

## FIRST CAUSE OF ACTION
## (Violation of 18 U.S.C. § 2701)

39. Plaintiff repeats and realleges the allegations set forth in each of the above paragraphs as 1 though 38 fully set forth herein.

40. Defendant intentionally accessed emails stored on the SMP Server, belonging to SMP Nutra. The access complained of and as alleged exceeded Defendant's authority. Furthermore, in accessing emails on the SMP Server in the manner complained of, Defendant improperly altered and/or prevented the authorized access of SMP Nutra employees, including Milano and B. Milano.

41. While Defendant had his own access to the SMP Server through his own emails and files, Defendant did not have authorization to access any other employees' email, including but not limited to the accounts of Plaintiff's President, Chief Executive Officer, and Human Resources Specialist.

42. With his unauthorized access, Defendant obtained electronic communications while they were in an electronic storage system. He did so without authorization and not in response to any governmental entity's request.

## SECOND CAUSE OF ACTION
## (Conversion)

43. Plaintiff repeats and realleges paragraphs 1 through 38 as fully set forth herein.

44. Through his role as an officer of SMP Nutra, Defendant had access to online accounts, and control of the website, emails, and customer information databases of Plaintiff.

45. Once Defendant's position as an officer was terminated, he refused to return access to these company property and assets, even after their return was demanded.

46. Defendant has converted the Digital Assets for his own benefit, as he is planning to start his own competing business using the information accessible through these digital assets.

47. Defendant is liable individually for conversion.

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty as an Officer)

48. Plaintiff repeats and realleges paragraphs 1 through 38 as fully set forth herein.

49. Defendant served as Chief Marketing Officer of SMP Nutra.

50. Under New York law, an officer of a corporation stands in fiduciary relationship to their corporation.

51. Defendant has assumed and engaged in the promotion of personal interests which are incompatible with the superior interests of his corporation, namely he has lost Plaintiff direct sales in offering product samples completely for free, which not only is a loss of profits for Plaintiff, but also undertaken to benefit a third-party personal connection of Defendant.

52. Defendant has diverted and exploited for his benefit assets of the corporation, namely the use of the company's website, email list, and other resources, for the explicit purpose of impeding SMP Nutra's business while beginning his own competing entity.

53. Directly because of the actions, Plaintiff has suffered damage in the form of loss of reputation, monies, and prospective business interests.

### FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty as a Shareholder)

54. Plaintiff repeats and realleges paragraphs 1 through 38 as fully set forth herein.

55. Defendant is a founding member and shareholder of Plaintiff SMP Nutra

56. Under New York law, the relationship between stockholders in a close corporation creates a fiduciary relationship that imposes a high degree of fidelity and good faith, and all stockholders of a close corporation owe fiduciary duties to the other stockholders.

57. Defendant has assumed and engaged in the promotion of personal interests which are incompatible with the superior interests of his corporation and other stockholders, and has acted in bad faith in furtherance of these personal interests.

58. Defendant has diverted and exploited for his benefit assets of the corporation, namely the use of the company's website, email list, and other resources.

59. Directly because of the actions, Plaintiff has suffered damage in the form of loss of reputation, monies, and prospective business interests.

[PAGE INTENTIONALLY LEFT BLANK]

**PRAYER FOR RELIEF**

**WHEREFORE,** SMP Nutra requests the following relief:

(a) Judgment in its favor against Defendant;

(b) Injunctive relief and/or specific performance to return the Digital Assets and to cease intentionally disrupting Plaintiff's business operations;

(c) Damages, including lost profits, loss of value and/or goodwill in an amount to be determined at trial but not less than $1,000,000;

(d) Awarding SMP Nutra its costs and attorneys' fees incurred in connection with this case; and

(e) Granting SMP Nutra such other and further relief as this Court deems just and proper.


Dated: Brooklyn, NY
September 1, 2023

LEWIS & LIN, LLC

By: _____

Brett Lewis, Esq.
Rachel Ann Stephens, Esq.
Shuyu Wang, Esq.
77 Sands Street, 6th Floor
Brooklyn, New York 11201
Tel: (718) 243-9323
Fax: (718) 243-9326