UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUPPLEMENT MANUFACTURING
PARTNER, INC. d/b/a SMP NUTRA,

                    Plaintiff,

v.

WILLIAM CARTWRIGHT,

                    Defendant.

Civil Action No. 2:23-cv-06585-JMA-AYS

**DECLARATION OF WILLIAM CARTWRIGHT IN OPPOSITION TO
PLAINTIFF'S MOTION TO HOLD DEFENDANT IN CONTEMPT**

William Cartwright declares as follows under penalty of perjury pursuant to 28 U.S.C.

§ 1746:

1.      I am the founder and owner of Nutra Seller Manufacturing ("Nutra Seller"). I

make this declaration in opposition to the motion for contempt (the "Motion" or "Mot.") filed by

Plaintiff Supplement Manufacturing Partner, Inc. d/b/a SMP Nutra ("SMP Nutra").

2.      I currently hold 50% of the shares of SMP Nutra.  SMP Nutra disputes my

ownership interest and has claimed that it is exercising its rights to repurchase my shares in SMP

Nutra.  I am fine with SMP Nutra repurchasing my shares for fair market value, but we have not

yet reached an agreement as to that value.

3.      I was the managing partner and Chief Marketing Officer of SMP Nutra from its

establishment in June 2019 until August 29, 2023 when SMP Nutra terminated my employment.

I believe the termination was done for improper purposes but have agreed to the Consent Order

as part of a process to allow SMP Nutra and me to separate and go our separate ways.

4.      I understand SMP Nutra claims in its Motion that I should be held in civil and

criminal contempt because I allegedly have an interest in Ciris Labs, Inc. d/b/a Top Tier Nutra, Inc. ("Top Tier"), toptiernutra.com, and/or was involved in e-blasts that Top Tier sent in December 2023. None of this is true.

5.      I do not have any interest in Top Tier and was not involved in any of the actions SMP Nutra alleges Top Tier committed in its Motion. I was not involved in the construction of Top Tier's website nor in the registration of the domain for its website.

6.      I also have had no professional involvement with Lawrence Simon, the founder of Top Tier, since we stopped working together after he left SMP Nutra in June 2023. I do not "meet up regularly" with Mr. Simon.

7.      I understand SMP Nutra's Motion is based in part on e-blasts received by several individuals outside of the supplement business in December 2023 and that were sent by Sam Johnston, who purports to be the CEO of Top Tier. I did not create nor do I or have I controlled the fictitious persona of Sam Johnston. I did not draft, send, or have any involvement with the Top Tier e-blasts that SMP Nutra discusses in its Motion.

8.      I received similar e-blasts in December 2023 to those received by Ms. Milano and Mr. Lewis.

9.      Attached hereto as **Exhibit 1** is a true and correct copy of an email I received from Sam Johnston, purporting to be the CEO of Top Tier, dated December 7, 2023.

10.     Attached hereto as **Exhibit 2** is a true and correct copy of an email I received from Sam Johnston, purporting to be the CEO of Top Tier, dated December 12, 2023.

11.     I have no information about how Top Tier came to send the e-blasts to Ms. Milano and Mr. Lewis. I understand based on the Affidavit of Mr. Simon that Rob Zorn was principally responsible for the Top Tier website and its contact list.

12.     I did not provide Top Tier, Mr. Zorn, or Mr. Simon any SMP Nutra proprietary information, including but not limited to SMP Nutra's customer lists, vendor lists, and price models.  I am not in possession of any pricing list or pricing model relating to SMP Nutra.

13.     I have not been involved in any decisions Top Tier made to use any particular web development software, domain name registrar, or CRM. I have not been involved in the pricing of Top Tier's products or any marketing campaign for Top Tier.

14.     I first learned that Top Tier was sending e-blasts when I received the e-blasts attached as Exhibits 1 and 2. I was only made aware of any similarity between Top Tier's and SMP Nutra's websites through SMP Nutra's Motion.

15.     On August 29, 2023, I exported two reports from SMP Nutra's HubSpot account: an "Active Customer List" and an "All Contacts" list (collectively, the "Customer List"). It was part of my responsibilities as Chief Marketing Officer to review customer lists. On this occasion, shortly after I exported the Customer List, I received notice of the termination of my employment with SMP Nutra.  I retained a copy of the Customer List as I did not want to delete anything on my computer that was in any way related to SMP Nutra or my dispute with SMP Nutra.

16.     After I exported the Customer List on August 29, 2023, I have not "[e]ngag[ed]" in an activity that use[d] SMP Nutra's proprietary data that was created on or after the formation of SMP Nutra." Consent Order ¶ 8(b). Neither did any of my "agents, officers, [or] employees [or any] other persons [or] entities in active concert or participation with him." Consent Order ¶ 8. Specifically, consistent with the Consent Order, I have not used the Customer List nor have I shared it with anyone, including Mr. Simon, Mr. Zorn, or anyone else affiliated with Top Tier.

17.     If SMP Nutra wishes me to delete the Customer List, I am happy to do so.

18.     Following the termination of my employment with SMP Nutra and the execution of the Partial Settlement Agreement on October 31, 2023, I have been developing my own company, Nutra Seller, and its website (nutraseller.com). I am developing Nutra Seller on my own and am the sole owner. Just as Top Tier would be a direct competitor to SMP Nutra, it is also a direct competitor with Nutra Seller.

19.     Nutra Seller's website went live in January 2024. It is entirely distinct from Top Tier's and SMP Nutra's websites. To be explicitly clear, Nutra Seller's website does not, and will not, use any SMP Nutra proprietary information. Nor will Nutra Seller will use any SMP Nutra proprietary information in its business operations.

20.     I will be creating an entirely new contact list for Nutra Seller. I will be generating this list from scratch without reference to SMP Nutra's Customer List.

21.     To date, I have not sent any e-blasts to anyone using Nutra Seller's new contact list.

22.     I note that, upon its creation, there may be certain names on my contact list that are also on SMP Nutra's Customer List, but that does not mean I will be using SMP Nutra's proprietary information to create Nutra Seller's contact list. For example, I originally met and worked with the CEO of the vendor SMP Nutra identified in its Motion years before I joined SMP Nutra, while I was working at another company, ABH Pharma. We are close personal friends, and we socialize regularly. As I obtained information about the Vendor prior to the formation of SMP Nutra, it is specifically excluded from being included as SMP Nutra's proprietary data in paragraph 8(b) of the Consent Order.

23.     On or around January 10, 2024, I sent a text message to the Vendor's CEO. In my message, I mentioned that I wanted to discuss "a few things." I had no idea that Top Tier had

previously reached out to the Vendor for a quote for a product exclusive to SMP Nutra or that the Vendor had informed Top Tier that it was out of stock of that product. To be clear, neither Top Tier nor its products were among the "things" I wanted to discuss with the Vendor's CEO. I wanted to inform him that I was planning to start my own company, Nutra Seller, and to catch up with someone I consider to be a good friend as well as a business colleague.

24.     Since its issuance on November 6, 2023, I have been working diligently to comply with my obligations under the Consent Order, including by turning over the information described in paragraph 7.

25.     Consistent with the Consent Order, I have not used and will not use the Customer List or any other SMP Nutra proprietary data for Nutra Seller or any other entity.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 15th day of February, 2024 at _Massapequa_ , New York.

WILLIAM CARTWRIGHT

5